UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

FRANKLIN MARSHALL,

                     Plaintiff,

        v.                                    22-CV-674
                                                  (BKS/DJS)

ANTHONY ANNUCCI, *et al.*,

                     Defendants.

---

**APPEARANCES:**                              **OF COUNSEL:**

FRANKLIN MARSHALL
19-B-368
Plaintiff, *pro se*
Collins Correctional Facility
P.O. Box 340
Collins, New York 14034

HON. LETITIA JAMES                  NOAH C. ENGELHART, ESQ.
New York State Attorney General       AMANDA K. KURYLUK, ESQ.
Counsel for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER[1]

*Pro se* Plaintiff Franklin Marshall brings this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his rights while he was in the custody

---

[1] This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

of the Department of Corrections and Community Supervision ("DOCCS"). Dkt. No. 1, Compl; *see also* Dkt. No. 10. Defendant Annucci has filed a Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56(a), seeking to dismiss the Complaint based on Plaintiff's failure to properly exhaust his administrative remedies, his lack of personal involvement, and on the merits. Dkt. No. 34. The deadline for Plaintiff to respond to the Motion was originally set for January 5, 2024. Dkt. No. 35. Plaintiff did not timely respond, but the Court *sua sponte* extended his time to do so until March 8, 2024. Dkt. No. 37. Plaintiff has still not filed any opposition to the Motion.

For the reasons that follow, the Court recommends that the Motion for Summary Judgment be **GRANTED**.

## I. BACKGROUND

The allegations in the Complaint concern Plaintiff's placement in the Sex Offender Counseling and Treatment Program ("SOCTP"). *See generally* Compl. at pp. 4-5. Plaintiff objected to the placement based on the fact that his conviction was not for a sexual offense. *Id.* at p. 4; *see also* Dkt. No. 10 at pp. 5-7. Upon review of the Complaint under 29 U.S.C. §§ 1915(e) and 1915A, the District Court identified the following claims:

2

> (1) Fourteenth Amendment due process claims arising from his alleged forced participation in the SOCTP in order to take advantage of his conditional release date;
>
> (2) a Fifth Amendment claim against self-incrimination based on allegations that, in order to successfully complete the SOCTP, Plaintiff must acknowledge responsibility for crimes of which he was not convicted;
>
> (3) a Fourteenth Amendment equal protection claim based on allegations that other individuals convicted of the same crime as Plaintiff are not required to participate in the SOCTP;
>
> (4) an Eighth Amendment claim based on allegations that requiring Plaintiff to participate in the SOCTP is cruel and unusual punishment; and
>
> (5) defamation claims based on allegations that Plaintiff is being wrongly treated like a sex offender in prison.

Dkt. No. 10 at pp. 5-6. For the reasons set forth in that initial review decision, the District Court permitted the case to proceed "only insofar as it asserts Fourteenth Amendment due process and equal protection claims, Fifth Amendment self-incrimination claims, and defamation claims." *Id.* at p. 18.

3

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier

of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. DISCUSSION

For the reasons which follow, the Court recommends that summary judgment is appropriate based on Plaintiff's failure to exhaust and the lack of personal involvement of Defendant Annucci.[2]

### A. Exhaustion of Administrative Remedies

*1. Exhaustion Procedure*

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Id.* at 524; *see also Ross v. Blake*, 578 U.S. 632, 638 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). Furthermore, § 1997e(a)

---

[2] Given this recommended disposition, the Court does not address the arguments advanced regarding the merits of the claims.

requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. *Howard v. Goord*, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999).

In New York, the administrative remedies consist of a three-step Incarcerated Grievance Program ("IGP"). First, a grievance is submitted to the Incarcerated Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). An inmate must submit a grievance "within 21 calendar days of an alleged occurrence." *Id.* at § 701.5(a)(1). An inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence. *Id.* at § 701.6(g). The IGRC reviews and investigates the formal complaint and then issues a written determination. *Id.* at § 701.5(b). Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id.* at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Central Office Review Committee ("CORC") makes the final administrative determination. *Id.* at § 701.5(d). Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court.

7

*Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

### 2. The Record Regarding Exhaustion

The record in this case does not appear to be in dispute. Plaintiff filed a grievance regarding his placement in the SOCTP. That grievance was dated June 16, 2022 and appears to have been received by the Collins Correctional Facility Grievance Office on June 23, 2022. Dkt. No. 34-8, Becker Decl. at ¶ 14 & Ex. B; *see also* Dkt. No. 34-5, Pl.'s Dep. at p. 57. On June 21, 2022, Plaintiff signed the Complaint in this action, which was received by the Court and docketed on June 24, 2022. Compl. at pp. 5-6. Plaintiff's grievance was responded to on July 14, 2022 with an explanation regarding his placement in the SOCTP. Becker Decl. at ¶ 14 & Ex. B. Plaintiff did not appeal that determination to the facility superintendent as provided for under DOCCS policy. Pl.'s Dep. at p. 62; Becker Decl. at ¶ 15.

"A plaintiff must exhaust his administrative remedies *before* filing his initial complaint in federal court." *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 582 (S.D.N.Y. 2015) (emphasis added); *see also Bowie v. Woodruff*, 2019 WL 7606078, at *5 (N.D.N.Y. Sept. 20, 2019), *report and recommendation adopted*, 2019 WL 5445519 (N.D.N.Y. Oct. 23, 2019). "When a prisoner does not properly exhaust his

8

administrative remedies before filing suit, the action must be dismissed." *Mateo v. Alexander*, 2010 WL 431718, at *3 (S.D.N.Y. Feb. 9, 2010). "In this case, Plaintiff . . . sued just a few days after requesting administrative remedies, and before there was any decision on his administrative request." *Burgos v. Craig*, 307 F. App'x 469, 471 (2d Cir. 2008). Plainly, therefore, Plaintiff's administrative remedies were not exhausted before filing this action which warrants dismissal. *Mateo v. Alexander*, 2010 WL 431718, at *3

Moreover, while it would not have cured his premature filing of this action, Plaintiff did not pursue the DOCCS grievance program through all required steps. Becker Decl. at ¶¶ 14-15; Dkt. No. 34-11, Seguin Decl.; Pl.'s Dep. at p. 62. "[W]here a plaintiff's grievance has not been appealed to and decided by the highest body in the administrative process, the plaintiff cannot be said to have exhausted his administrative remedies and his claims are thus properly dismissed by a court." *Jones v. Allen*, 2010 WL 3260081, at *2 (S.D.N.Y. Aug. 9, 2010).

### 3. Whether Plaintiff's Failure to Exhaust Administrative Remedies May be Excused

A prisoner's failure to exhaust administrative remedies may nonetheless be excused if remedies were unavailable to the inmate. *Ross v. Blake*, 578 U.S. at 642. As the Supreme Court stated in *Ross*, "[a]n inmate . . . must exhaust available remedies, but

need not exhaust unavailable ones." *Id.* The Court provided three potential circumstances in which administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end - with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643-44. Plaintiff bears the burden of establishing that the grievance procedures were unavailable within the meaning of *Ross*. *Martin v. Wyckoff*, 2018 WL 7356771, at *5 (N.D.N.Y. Oct. 16, 2018), *report and recommendation adopted*, 2019 WL 689081 (N.D.N.Y. Feb. 19, 2019). Plaintiff makes no argument that the grievance process was unavailable to him and thus cannot carry that burden since he did in fact pursue, at least at the outset, to resolve this issue through the grievance process. *See White v. Williams*, 2016 WL 4006461, at *5 (N.D.N.Y. June 22, 2016), *report and recommendation adopted*, 2016 WL 4005849 (N.D.N.Y. July 25, 2016).

For these reasons, the Court recommends that the Motion for Summary Judgment be granted based on Plaintiff's failure to exhaust his administrative remedies.

## B. Lack of Personal Involvement

The Court also recommends that the Complaint be dismissed based on Defendant Annucci's conceded lack of personal involvement.

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). A supervisory official "may not be held liable for damages merely because he held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Despite this rule, the Second Circuit for some time held that a supervisory official could be held liable under circumstances related to that supervisory role that did not involve their direct action. *See Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995). *Colon* set forth five theories of liability that could apply to supervisory officials. *Id.* at 873. The Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), however, "engendered conflict within our Circuit about the continuing vitality of the supervisory liability test set forth in *Colon*." *Reynolds v. Barrett*, 685 F.3d 193, 206 n. 14 (2d Cir. 2012). The conflict remained unresolved until the Second Circuit's decision in *Tangreti v. Bachmann* which concluded that "after *Iqbal*, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official

11

defendant, through the official's own individual actions, has violated the Constitution.'" 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. at 676).

*Tangreti* requires that Plaintiff allege and establish that Annucci violated Plaintiff's rights through his "own conduct, not by reason of [his] supervision of others who committed the violation." 983 F.3d at 619. At his deposition Plaintiff conceded that he did not believe that Defendant Annucci had specifically decided to place Plaintiff in the SOCTP. Pl.'s Dep. at p. 44. Plaintiff further conceded that Annucci had no personal involvement in Plaintiff's self-incrimination and equal protection claims. *Id.* at pp. 45-47. Finally, Plaintiff could identify no personal involvement of Defendant with regard to his defamation claims. *Id.* at pp. 50-51.[3] Instead, it was clear that Annucci was named as a Defendant because of his supervisory role at DOCCS. *Id.* at pp. 43-44 & 47. As a result, Plaintiff has failed to "establish a deliberate, intentional act on the part of the defendant to violate the plaintiff's rights." *Tangreti v. Bachmann*, 983 F.3d at 618 (quoting *Porro v. Barnes*, 624 F.3d 1322, 1327-28) (10th Cir. 2010)). The Complaint, therefore, fails to specifically articulate Annucci's personal involvement in the alleged violations of Plaintiff's rights and should be dismissed.

---

[3] Whether viewed as a section 1983 claim or a pure state law claim, Plaintiff's concession that Annucci was not involved in any defamatory statements precludes his claim. *See Houghton v. Cardone*, 295 F. Supp. 2d 268, 274 (W.D.N.Y. 2003).

### C. John Doe Defendant

The Complaint also names a single John Doe Defendant. *See generally* Compl. The District Court specifically advised Plaintiff that if he "wishes to pursue his claims against defendant Doe, he must take reasonable steps to ascertain through discovery the identity of that individual." Dkt. No. 10 at p. 9. He was further advised that after identifying the Doe Defendant Plaintiff would need to amend the Complaint. *Id.* No such amendment was ever made.

"Where discovery has closed and the Plaintiff has had ample time and opportunity to identify and serve John Doe Defendants, it is appropriate to dismiss those Defendants without prejudice." *Delrosario v. City of New York*, 2010 WL 882990, at *5 (S.D.N.Y. Mar. 4, 2010). Dismissal of an unidentified Doe Defendant is appropriate pursuant to FED. R. CIV. P. 41(b), which permits a court to dismiss an action for failure to prosecute or to comply with a court order, and FED. R. CIV. P. 4(m), under which a court must dismiss, absent a showing of "good cause," claims against a defendant who is not served within ninety days of the filing of the complaint. *See Cusamano v. Sobek*, 604 F. Supp. 2d 416, 501-02 (N.D.N.Y. 2009). Therefore, because discovery is closed and Plaintiff has not identified the John Doe Defendant, the Court recommends that Plaintiff's claims against that Defendant be dismissed.

13

## IV. CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that the Motion for Summary Judgment (Dkt. No. 34) be **GRANTED**; and it is further

**RECOMMENDED**, that the Complaint be **DISMISSED**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[4] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72

---

[4] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

& 6(a).

Date:  April 1, 2024
       Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge

15